JOHN WEINMIESTER v. HARLEY INGERSOLL.

*Common use of premises by owners in severalty.*

W. and I. owned a building in severalty, W. having the north half and I. the south. The building had a common entrance and stairway to the second floor, but above the first story a partition wall divided it. W. having leased his portion to I. for a term of years cut doors, for the lessee's convenience, through the partition and ran a stairway from the second to the third floor on his own premises. The only hall-way on the second floor was on I.'s side. When the lease expired I. plastered up the doors in the partition wall and refused to allow W. to use the hall-way on his side. There was no satisfactory showing that the arrangements made for the lessee's convenience were intended to survive the lease or that I. had estopped himself from objecting to W.'s use of his part of the premises thereafter. *Held,* that W. could not claim any easement in I.'s premises after the termination of the lease, and could not maintain an injunction bill to restrain I. from obstructing his use of the hall-way.

Appeal from Ingham. Submitted June 30. Decided October 12.

INJUNCTION to restrain obstruction of passage-way in dwelling. Defendant appeals. Reversed; bill dismissed.

*J. C. Shields* for complainant.

*S. L. Kilbourne* for defendant.

GRAVES, J. The complainant owns the north half and the defendant the south half of a building adjoining the Hudson House on the north in the city of Lansing. It was put up in 1854, the north half by William Hinman and the other by the defendant, and was constructed with a flight of stairs from a front entrance on the ground floor, to a hall on the second floor running back to a second flight of stairs which communicated with the third story; the entrance, hall and stairways, being equally on the land of Hinman and of defendant and used by them and their tenants, in common.

In 1871 the complainant became the owner of the Hinman portion of the premises. The building had not proved to be profitable and moreover was found to be weak and the parties were apprehensive that it might fall. They accordingly resolved to make such changes and additions as were deemed necessary and expedient to give it due strength and increase its usefulness. With this view they employed Mr. Gillett, an architect, in the spring of 1872 to devise the requisite improvements and supervise the work, and he immediately prepared such plans as he considered best and the parties adopted them.

It is not essential to refer to all the particulars. This scheme left the passage-way from the front to the second floor practically unchanged. But the rest of the arrangement was substantially subverted and the new plans contemplated distinct hall-ways and stairs for each proprietor, the two systems to be separated by a brick wall, and each to be entered through a door from the landing on the second floor at the head of the front stairs. According to this design as will be noticed, the enjoyment of each proprietor, after passing the landing on the second floor, was to be confined to his own side of the line. Messrs. Wright & Axtell,

two mechanics, were set to do the work, and when it had reached the second floor the defendant proposed a series of changes and the complainant assented. The occasion of this deviation from the plans of the architect, was that the defendant since the commencement of the work had leased complainant's second and third stories for five years, to be used in conjunction with his own premises for a boarding-house, and it was desirable to have the changes and improvements so modified that the portions hired by defendant could be conveniently used with his own premises for the purpose intended; it being evident that if the plans as drawn were carried out no such use would be practicable.

The complainant says in his testimony, "that after Mr. Ingersoll rented, the original plan was changed as to the arrangement of the second floor according to Mr. Ingersoll's wishes;" and the fact is distinct that the object intended to be accomplished and which was accomplished by the departure from the plan which was first agreed on, was the accommodation of the portion owned by complainant to that owned by defendant, in such manner that the whole of defendant's premises and the second and third stories of complainant's might be satisfactorily used by defendant as one boarding-house establishment. The particular alterations to which there is any occasion to advert were as follows: Whilst retaining the hall as laid out on the defendant's side of the division wall, the hall on complainant's side, together with stairs laid out to run therefrom along the same line to the third story, were abandoned. As the whole second and third stories of complainant's property were going to be used by defendant with his property as one concern, the hall on his side was deemed sufficient; while the throwing out of the other, together with the stairs, would result in giving greater size to the apartments on that side, and in leaving room at a convenient point for a passage-way through the division wall for communication between the apartments owned and those leased. Two doors were cut through for the purpose of such communication and a flight of stairs was run from the hall referred to on defend-

ant's premises, north, and on the premises of complainant to the third story.

As soon as the agreed improvements were completed the defendant entered under his lease and held thereunder for the full term of five years, and thereafter on the same terms for two years more, making seven years in all. The complainant then demanded a slight increase of rent which the defendant refused to give and the relation between them of landlord and tenant ceased. The defendant notified complainant that he had no right to use the hall and that the openings communicating with complainant's premises would be closed. The complainant however contended that the right to use the hall substantially as it was, in common with the occupants of defendant's premises, had become appurtenant to his premises, and that the same principle in defendant's favor applied to the stairs running from the hall north on complainant's premises to the third floor. In this state of things the complainant leased to a third person and the defendant plastered up the openings from the hall on the north side and the complainant caused the obstructions to be removed. Soon afterwards the same thing was partially repeated and the defendant sued in trespass.

The complainant then brought this bill for a perpetual injunction against any obstruction to the use by the occupants of his premises in common with the occupants of the others of the hall in question, and the court granted the relief prayed and defendant appealed. If the bill intended to set up a case of interference with complainant's use of the front stairs and landing in connection with the passage-way on his own side and by means of which he has access to his premises, it has not done it. The pleadings raise no issue of any disturbance of that kind. The complainant has had the undisturbed use of the front passage in going to and from the door near the head of it on his side of the line. The space in contention is the hall on defendant's premises and the passage-ways on that side communicating with complainant's apartments. This is admitted. The essence of complainant's case is that under the doctrine of

equitable estoppel or by means of parol understandings so far carried out that equity will enforce and protect them, he has acquired as appurtenant to his premises a perpetual easement in the hall-way on defendant's premises, together with the right in perpetuity to communicate therewith by means of the door-ways on his side and the door-way thereto from the landing at the head of the front stairs, and that as part of the transactions in which these rights originated in his favor the defendant obtained the like easement in the stairs running from the hall to the north on complainant's premises and extending to the third floor. It is questionable whether the bill presents any case of equitable estoppel, but perhaps it is needless to look at this point very closely. The parties were no doubt competent to furrow their respective holdings with all sorts of zigzag and eccentric easements and stamp them as perpetual servitudes on the property. And there is no question but that the easements described were such as might have been made either as temporary expedients or durable servitudes. But they were not such as the parties were likely to mark out and establish as perpetual incidents of the two properties.

No one can readily believe that complainant would have consented except on very extraordinary terms to burden his premises forever with a cross stairway from the second to the third floor for the accommodation of defendant's premises. And surely nothing could be less credible than that defendant for any reason or consideration which appears would have burdened his premises in perpetuity with a hall-way six feet wide for the benefit of complainant's premises, and, thereby in addition to other drawbacks, have narrowed his exclusive enjoyment in the second story to a space only sixteen feet in width. There ought therefore to be very strong proof to justify an opinion that the defendant consented to the imposition of a ceaseless burden so injurious. It is not denied that there was an agreement for fitting up the premises to enable them to be used together as in fact they were used during the lease and that it was contemplated that the defendant during his term should use the halls and passages

in question as parts of a common holding and not as distinct conveniences. The question in dispute is whether the agreement went further and not only provided that the arrangements should be permanent during the defendant's term as tenant, but should survive the lease and constitute perpetual servitudes.

The evidence is conflicting, but a thorough investigation has induced the conviction that, whatever may have been complainant's understanding, it was not the defendant's that the hall and stair-way in controversy should be subject to foreign use and remain perpetual easements, and that no conduct by the defendant is proved to estop him from objecting to complainant's claim. There was consequently no agreement to give complainant an easement in the hall and passage-ways, and there was nothing in defendant's conduct to raise an estoppel. He bore the expense of the work on his premises, and it was for complainant to pay for what was done on his own, and he had less to pay than he would have had if no change had been made and the properties had been kept distinct as first intended. He was getting his premises under lease for a term of years to the adjacent proprietor, and the cost of putting his building into good shape for use by itself would be less, as the proof shows conclusively, than $200. He had an object quite sufficient without looking further than the lease, and the defendant regarded the arrangement as confined to the tenancy and as one to terminate with it. Complainant undertook to fit up the premises to suit the defendant as lessee, and for a cash rent sold the right to associate his property with the other in respect to use and enjoyment for the given term in a special way, and the term having ended and the transaction having become fulfilled no easement of one on the premises of the other can be longer insisted on.

The decree should be reversed and the bill dismissed with the costs of both courts.

The other Justices concurred.